UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ALLY BANK f/k/a GMAC BANK,

                              Plaintiff,           **REPORT AND**
                                                  **RECOMMENDATION**
      -against-
                                                  CV 09-2795 (ADS) (WDW)
JOHN REIMER and JEANNE KERAMIS,

                              Defendant(s).
------------------------------------------------------------------X
**WILLIAM D. WALL, United States Magistrate Judge:**

Before the undersigned on referral from District Judge Spatt is a motion for an order of attachment and injunctive relief submitted by plaintiff Ally Bank ("Ally"). See Docket Entry ("DE") [3]. For the reasons stated herein, it is recommended that plaintiff's motion for an order of attachment be denied and that its motion for a preliminary injunction be granted.

## BACKGROUND

Defendant John Reimer is Vice-President/Comptroller of 1st Republic Mortgage Bankers, Inc. ("1st Republic"). Am. Compl. ¶13. 1st Republic has allegedly been involved in questionable financial transactions involving several banks in addition to plaintiff Ally. One particular case, CV 09-0247 (ADS) *GMAC Bank v. 1st Republic Mortgage Bankers, Inc., et al.* (the "Related Action"), was brought by GMAC (Ally's predecessor) against 1st Republic and its principals, including Reimer, seeking to recover substantial loans made to 1st Republic.[1] GMAC alleges that 1st Republic is indebted to it for over $10,000,000. *See* Related Action, CV 09-0247, Compl. ¶10, DE [5-1]. In addition to his actions as a corporate officer, Reimer is alleged to have

---

[1] Additional cases have been filed against these defendants by other plaintiffs. *See, e.g.*, CV 09-0177 *Firstrust Bank v. 1st Republic Mortgage Bankers, Inc., et al.*; CV 09-0221 *Financial Freedom Senior Funding Corp. v. Lenders Abstract & Settlement Servs. Inc., et al.*

personally retained the proceeds from advances rightfully belonging to GMAC. *Id.* ¶¶ 63-64.

On January 13, 2009, representatives of another plaintiff bank, Firstrust Bank ("Firstrust") visited 1st Republic's offices to "determine the extent of the fraud." MacElree Aff. at ¶11, DE [3]. According to Ally, the successor in interest to GMAC, it was "advised that Reimer abruptly left the 1st Republic offices during the January 13 Meeting and has not since returned to 1st Republic's offices." *Id.* ¶11. On January 14th, Reimer transferred title to a property located at 166 Guildford Court, West Hempstead, New York (the "West Hempstead property") to defendant Jeanne Keramis. MacElree Aff. at ¶32. The Bargain and Sale Deed was recorded on January 29, 2009. *See* MacElree Aff., Ex. O. On January 21, 2009, GMAC commenced the Related Action. The transfer of the West Hempstead property is not discussed in the Related Action, nor is Keramis named as a defendant.

The current action was commenced on July 1, 2009; in addition to Reimer and Keramis, the original complaint named Neil Sisskind, Scott P. Sisskind, David Anakie and Linkup Media. DE [18]. Plaintiff also moved, by order to show cause, for a temporary restraining order and an order of attachment. DE [3]. The order to show cause was signed by Judge Spatt on July 1st. DE [6]. According to affidavits of service filed by plaintiff, Keramis was personally served with the order to show cause and related papers on July 3, 2009, and she also accepted service of Reimer's papers. *See* DE [9]. Judge Spatt referred the matter for report and recommendation. Memo & Order, DE [12]. On July 21, 2009, plaintiff filed an amended complaint naming only Reimer and Keramis as defendants. DE [18].

Two proceedings were held before the undersigned. The first, on July 9, 2009, was attended by plaintiff's counsel and counsel for Neil Sisskind and Scott Sisskind. *See* Minute

Entry, DE [14]. The hearing was adjourned temporarily due to the bankruptcy filing of Scott Sisskind, and a second proceeding was scheduled for July 20, 2009. A hearing on plaintiff's motion was held on July 20, 2009 and was attended by plaintiff's counsel and counsel for defendant Reimer. At that time, the undersigned directed the plaintiff to provide additional briefing on several issues. Reimer also submitted papers. On August 10, 2009, an attorney filed a notice of appearance on behalf of defendant Keramis. DE [26]. She also submitted a letter motion requesting an opportunity to respond to the order to show cause. DE [25].[2] The undersigned denied her request, noting that she had "provided no reason for her failure to respond to the order to show cause or to appear at either of the two proceedings" held previously. Elec. Order of 8/11/09.

## DISCUSSION

After the matter was originally referred to the undersigned, Ally amended its complaint and eliminated several defendants and causes of action. The Amended Complaint alleges four causes of action brought pursuant to sections 273, 275, 276 and 276-a of New York's Debtor and Creditor Law ("DCL"). As the Amended Complaint names only Reimer and Keramis and concerns only the allegedly fraudulent transfer of the West Hempstead property. , the court will limit its analysis accordingly. Indeed plaintiff's counsel has represented that Ally seeks only "an Order of Attachment against the [West Hempstead] property and a preliminary injunction enjoining her from encumbering or conveying the property pending a determination of this action." Ltr., DE [27].

---

[2]The letter also contained a request for an extension of time to respond to the Amended Complaint, to which plaintiff had no objection. The court granted that request, and Keramis filed an answer on August 17, 2009.

**I. Order of Attachment**

Pursuant to Rule 64, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). New York law provides for the issuance of an order of attachment under some circumstances. *See* CPLR §6201. Plaintiff bears "a heavy burden in attempting to establish its right to an attachment, because 'New York attachment statutes are construed strictly against those who seek to invoke the remedy.'" *National Audubon Soc'y, Inc. v. Sonopia Corp.,* 2009 WL 636952, at *2 (S.D.N.Y. March 6, 2009)(quoting *Buy This, Inc. v. MCI Worldcomm Communications Inc.,* 178 F. Supp. 2d 380, 383 (S.D.N.Y. 2001)).

Pre-judgment attachments are available under New York law "to obtain quasi-in-rem jurisdiction over a foreign defendant or to establish security for satisfaction of a potential judgment, or both." *Reading & Bates Corp. v. National Iranian Oil Co.,* 478 F. Supp. 724, 726 (S.D.N.Y. 1979); *see also Rothberg v. Chloe Foods Corp.,* 2008 WL 268061, at *7 (E.D.N.Y. Jan. 29, 2008) ("Prejudgment attachment is a provisional remedy to secure a debt by preliminary levy upon the property of the debtor in order to conserve that property for eventual execution."). As both Reimer and Keramis are New York residents and are already subject to the court's jurisdiction, "attachment is only permitted upon a showing that the defendant is attempting to dispose of his assets in order to frustrate the ability of the plaintiff to collect any judgment that might ultimately be obtained." *Ames v. Clifford,* 863 F. Supp. 175, 177 (S.D.N.Y. 1994)**.** In such a case, "attachment should issue only upon a showing that *drastic action* is required for security purposes." *Buy This Inc.,* 178 F. Supp. 2d at 383 (emphasis in original) (quoting *Reading & Bates,* 478 F. Supp. at 726-27 (citations omitted)).

To prevail on their motion, plaintiffs have the burden of proving, by affidavit or written evidence, the four elements required under New York law: "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to plaintiff." CPLR §6212(a). In this case, plaintiffs claim as their grounds for attachment CPLR §6201(3) that provides that an order of attachment may be granted when "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts. CPLR §6201(3).

The first statutory requirement to be proved by plaintiffs is that they have stated a claim for money damages. Specifically, §6201 provides for attachment "where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment." CPLR §6201. "The standard for determining whether a cause of action exists for purposes of attachment under New York law is a liberal one. Unless the plaintiff's papers clearly establish that the plaintiff must ultimately be defeated, a cause of action exists." *Algonquin Power Corp. v. Trafalgar Power,* 2000 WL 33963085, at *7 (N.D.N.Y. Nov. 8, 2000).

Despite the exchanges made at the prior proceedings and the court's request for additional briefing, plaintiff has not convinced the court that an order of attachment is appropriate in this case in light of the reasoning in *Trafalgar Power, Inc. v. Aetna Life Ins. Co.,* 131 F. Supp. 2d 341 (N.D.N.Y. 2001). In *Trafalgar*, the various parties were involved in multiple actions. In one case, CV 99-1238, plaintiff Trafalgar Power, Inc. ("TPI") stated a breach of contract claim

5

against defendants Algonquin Power Corporation, Inc and Algonquin Power Income Fund ("Algonquin"), and Algonquin asserted counterclaims against TPI.[3] At some point in time, TPI obtained a $7.6 million tort judgment "in a separate yet related professional malpractice action." 131 F. Supp. 2d at 343. TPI assigned the judgment to Pine Run Virginia, Inc. ("Pine Run") for "Five ($5.00) Dollars and other good and valuable consideration." *Id.* at 345. Upon learning of the assignment, and of the fact that both TPI and Pine Run were owned by the same individual, Algonquin filed a separate action, CV 00-1246, asserting a cause of action for conversion and claiming that the assignment violated DCL §§273 and 276. Algonquin claimed that TPI was attempting to frustrate Algonquin's potential judgment on its counterclaims in CV 99-1238 and that absent an order of attachment and/or a preliminary injunction in CV 00-1246, TPI would not have sufficient assets to satisfy any judgment Algonquin might obtain on its counterclaims in the breach of contract action. *Id.*

Analyzing Algonquin's request for an order of attachment, the *Trafalgar* court found that it failed to demonstrate a probability of success on its conversion claim and thus could not obtain an order of attachment based on that claim. *Id.* at 349-50. With the conversion claim removed as a basis for an order of attachment, the court specifically found that Algonquin's remaining claims under DCL §§ 273 and 276 could not independently support an order of attachment. because those claims sought equitable relief, not a money judgment. *Id.*[4] "TPI's debt to

---

[3]There were other parties involved in the breach of contract claim but they are not involved in the events that make the *Trafalgar* decision relevant to the case at hand and thus are not discussed herein.

[4]The *Trafalgar* court further noted that had Algonquin made its motion for an order of attachment in CV 99-1238, the breach of contract action, "this threshold problem would not exist because its counterclaims in that action demand a money judgment." *Id.* at 349 n. 8

Algonquin is premised upon Algonquin's success in [CV 99-1238] and, thus, Algonquin has an unmatured claim against TPI." *Id*. at 349, n.9. The court concluded that an order of attachment is not warranted on such an unmatured claim. *Id.* at 349.

The circumstances presented in the current case bear a striking resemblance to those presented in *Trafalgar*. In the Related Action, Ally seeks money damages for Reimer's alleged actions at 1st Republic. The current action, however, does not provide an independent basis for money damages. Instead, Ally seeks relief under the DCL in this action for the alleged fraudulent conveyance of the West Hempstead property, a property in which Ally has no interest except as an asset to satisfy a potential judgment against Reimer in the Related action. As in *Trafalgar,* Reimer's debt to Ally is premised upon Ally's success in the Related Action.

Similarly, Ally has asserted only equitable claims under the DCL. Ally's failure to state a claim for money damages in this case was raised by the court earlier, and plaintiff has attempted to cure the court's misgivings in two ways. First, it has added a claim for attorneys' fees under DCL 276-a. This claim, however, must be predicated upon plaintiff's success on the fraudulent conveyance claims and cannot stand alone as a claim for money judgment. In addition, the court notes that the presence of a claim pursuant to DCL §276-a did not affect the *Trafalgar* court's conclusion that no claim for money damages had been asserted. Plaintiff also amended the complaint to include demands for "money damages" in all its claims. Unfortunately, the problem is not cured by simply adding language and changing the label of the equitable relief sought under the DCL. This approach also fails to cure the core problem for plaintiff – the underlying "debt" owed by Reimer is Ally's unmatured claim for damages in the Related Action. The fraudulent conveyance action is rooted in a finding of liability against Reimer in the Related

7

Action and without such a finding, Ally's fraudulent conveyance action will ultimately fail.[5]

The court finds that plaintiff has not stated a claim for money damages and therefore it has failed to establish the first statutory requirement for imposition of an order of attachment. Accordingly, it is recommended that plaintiff's motion for an order of attachment be denied.

## II. Preliminary Injunction

Ally also seeks an injunction preventing defendants from further transferring the West Hempstead property. As a threshold matter, the court addresses the question of whether a preliminary injunction is available to essentially enable a potential judgment creditor to preserve assets to satisfy a possible money judgment in light of the Supreme Court's ruling in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308 (1999). As the *Trafalgar* court found, however, *Grupo Mexicano* stands for the proposition that injunctive relief is not available to freeze "a debtor's assets pending adjudication of an action *solely* at law." 131 F. Supp. 2d at 350 (emphasis in original). Plaintiff here seeks equitable relief, and as the remedy ultimately available to plaintiff is restraint on further disposition of the property, that relief is available to plaintiff as preliminary relief. *See id.* at 350 (citing *De Beers Consol. Mines Ltd v. United States,* 325 U.S. 212, 220 (1945)("[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally")); *see also Capital Distrib. Servs. Ltd v. Ducor Express Airlines, Inc.,* 440 F. Supp. 2d 195, 209 (E.D.N.Y. 2006)(citing *Republic of the Philippines v. Marcos,* 806 F.2d 344, 356 (2d Cir. 1986). At the conclusion of this case, Ally may be entitled to injunctive relief under New York law that allows

---

[5]Such a finding on plaintiff's behalf is, however, more likely than not since Reimer has defaulted in the Related Action and faces imposition of default damages.

the court to restrain a defendant from disposing of his property where there is a fraudulent conveyance as to a creditor, even one whose claim has not matured. *See* DCL §279. Since Ally may ultimately be entitled to equitable relief, it is not barred from seeking a preliminary injunction that would maintain the status quo. The court now turns to an analysis of whether plaintiff has established its entitlement to a preliminary injunction.

**Preliminary injunction standards.**

Ally seeks a preliminary injunction restraining defendants from transferring, dissipating, assigning, conveying or selling the West Hempstead property. To obtain a preliminary injunction, Ally must establish "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, LLC v. Hometown Info, Inc.,* 375 F.3d 190, 192 (2d Cir. 2004).

A. Irreparable Harm

Despite the general rule that there is no irreparable harm where a party's injuries can be redressed by a monetary award, "a preliminary injunction is appropriate to prevent a defendant from taking actions to frustrate a judgment." *Capital Distrib. Servs.,* 440 F. Supp. 2d at 210 (collecting cases); *see also Bank of China v. NBM LLC,* 192 F. Supp. 2d 183, 191-92 (S.D.N.Y. 2002). A party may establish irreparable harm by demonstrating that the defendant has acted to frustrate a judgment. *See Encore Credit Corp. v LaMattina,* 2006 WL 148909, at *5 (E.D.N.Y. Jan. 18, 2006); *Trafalgar,* 131 F. Supp. 2d at 350 (citing *Pashaian v. Eccelston Prop., Ltd,* 88 F.3d 77, 85 (2d Cir.1996)). As will be discussed, *infra,* plaintiff has established that defendant

Reimer's actions were designed to remove the West Hempstead property from the reach of his creditors and thus it has demonstrated irreparable harm in the absence of an injunction.

B.  Likelihood of Success

Ally claims that the transfer of the West Hempstead property constitutes a fraudulent conveyance in violation of three sections of New York's Debtor and Creditor Law.  The court will now examine whether plaintiff has established a likelihood of success on the merits of any of those claims.

1.  DCL §276

Unlike Ally's other claims, "a cause of action under §276 'may lie even where fair consideration was paid and where the debtor remains solvent.'" *Pashaian,* 88 F.3d at 86 (quoting *Grumman Aerospace Corp. v. Rice,* 605 N.Y.S.2d 305, 307 (2d Dep't 1993)).  To establish likelihood of success on its DCL §276 claim, plaintiff must show that the conveyance was made with actual intent to hinder, delay, or defraud creditors. "Actual intent need not be proven by direct evidence, but may be inferred from the circumstances surrounding the allegedly fraudulent transfer." *Capital Distrib. Servs.,* 440 F. Supp. 2d at 203 (citing *Steinberg v. Levine,* 6 A.D.3d 620, 774 N.Y.S.2d 810 (2d Dep't 2004)).

Since "[f]raudulent intent is rarely susceptible to direct proof," *In re Kaiser,* 722 F.2d 1574, 1582 (2d Cir. 1983), plaintiffs "often seek to prove intent to defraud circumstantially by proof of certain 'objective facts' – 'badges of fraud' – that give rise to an inference of intent to defraud." *Lippe v. Bairnco Corp.,* 249 F. Supp. 2d 357, 374-75 (S.D.N.Y. 2003) (citing *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 540-41 (1994)).  In cases involving a purported fraudulent transfer, the "badges of fraud" include evidence such as "1) gross inadequacy of consideration;

10

2) a close relationship between transferor and transferee; 3) the transferor's insolvency as a result of the conveyance; 4) a questionable transfer not in the ordinary course of business; 5) secrecy in the transfer; and 6) retention of control of the property by the transferor after the conveyance." *Lippe,* 249 F. Supp. 2d at 375 (citations omitted). Another indicator of possible fraud is "the general chronology of the events and transactions under inquiry." *Mazzeo,* 306 F. Supp. 2d at 312 (citing *In re Kaiser,* 722 F.2d at 1582-83 (additional citations omitted)).

In this case, transfer of the West Hempstead property from Reimer to Keramis is marked by many of the common indicators of a fraudulent transfer. First, there is no evidence of any consideration for the transfer.[6] Under New York law, fair consideration is given for property when in exchange, "as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied." DCL §272. In the case of a transfer to satisfy an antecedent debt, fair consideration is given when the amount of the debt is not "disproportionately small as compared with the value of the property." *Id.* Reimer has admitted that there was no consideration for the transfer. At the proceeding on July 20th, the following exchange took place between the undersigned and Reimer's counsel, Mr. Barnes:

> THE COURT: Mr. Barnes, was Mr. Kandel [plaintiff's counsel]
> correct in saying the transfer was without consideration?
> MR. BARNES: That's correct, your Honor.

Tr. of 7/20/09 at 7:6-8.[7] In a subsequent submission to the court, Mr. Barnes attempts to

---

[6]As a finding of no fair consideration is not necessary for plaintiff to prevail on a claim under DCL §276, the court's analysis here goes simply to the lack of adequate consideration as one of the so-called badges of fraud.

[7]Reimer's counsel also consented to entry of an order of attachment of the West Hempstead property. Tr. of 7/20/09 at 6-7:21-2.

11

backtrack somewhat by stating that he had, in response to the court's inquiry, "confirmed that there was no *contemporaneous* consideration for the January 2009 transfer." Ltr. of 8/10/09 at 2, DE [24] (emphasis added). He has not provided any evidence, however, to support a finding that there was any consideration, contemporaneous or not, for the transfer.

Reimer also states that the transfer was not fraudulent since he "simply re-conveyed the house [sic] his son's mother (who was previously on the deed to the property) and who contributed to the purchase of the same." Ltr of 8/10/09, DE [24].[8] As evidence, Reimer points to the following: Keramis's testimony that she contributed to the downpayment on the house, the fact that Keramis was on the deed when Reimer and she originally purchased the property, and that there had been other discussions between the two regarding disposition of the property prior to the January 2009 conveyance. *Id.* A review of the portion of Keramis's testimony provided by Reimer shows that Keramis testified to contributing $13,000 towards the purchase of the price. Keramis Dep., 38:7-12, DE [24] Ex. A. Even crediting this testimony as a claim of an antecedent debt owed by Reimer to Keramis, the amount of $13,000 is disproportionately small to the value of the property, which Reimer and Keramis had purchased in 1996 for $218,500.00. *See* MacElree Aff., Ex. M, DE [3]. As such, the $13,000 "debt" does not constitute fair consideration.

Keramis also testified that "I felt he owed me a good life . . . I was entitled to something when I did leave." *Id.* at 95-96:25-7. There is no indication of any testimony or any other evidence regarding an enforceable agreement between Reimer and Keramis that could serve as an

---

[8]At the time of their purchase of the West Hempstead property in August 1996, both Reimer and Keramis appeared on the deed as tenants in common. For some unknown reason, Reimer and Keramis conveyed the property to Reimer alone in October 1998.

antecedent debt capable of being discharged by the transfer of the West Hempstead property to Keramis. Reimer's mention of Keramis as the mother of his son may be construed as a suggestion that his relationship with Keramis could somehow support a finding of fair consideration. However, "[a] s a general proposition, under New York law [l]ove and affection are inadequate consideration under the [Debtor and Creditor Law]." *Mazzeo,* 306 F. Supp. 2d at 309 (citations omitted); *see also St. Teresa's Nursing Home v. Vuksanovich*, 268 A.D.2d 421, 422, 702 N.Y.S.2d 92, 94 (2d Dep't 2000)(noting that "family affection" does not constitute fair consideration under the DCL). Based on the current record, the court finds that fair consideration was not given for the transfer of the West Hempstead property.

The relationship between the Reimer and Keramis is further evidence of fraudulent intent. Even if they are not currently in a relationship, their connection to one another is a personal one, and thus the transfer does not appear on its face to be an at arm's length, business transaction.

Plaintiff has also provided evidence that Reimer maintained his residence at the property after the transfer, further support of a finding of fraudulent intent. Keramis testified at her deposition on March 16, 2009 that Reimer still resided at the West Hempstead property, two months after the transfer. Keramis Dep. 5:17-22. As such, Reimer's continued use and benefit of the property constitutes another badge of fraud.

Finally, and most damning in the court's estimation, is the timing of the transfer. The transfer took place the very next day after Firstrust visited 1st Republic and discovered the alleged fraud. According to plaintiff, Firstrust visited 1st Republic's offices on January 13, 2009 to audit the books and determine the extent of the fraud. Am. Compl. ¶12. Reimer allegedly left the premises that day and has never returned. *Id.* ¶13. It is uncontradicted that the transfer of the

13

West Hempstead property from Reimer to Keramis occurred on January 14, 2009. The apparent fact that Reimer was on notice that the alleged fraud at 1st Republic had been discovered one day and that he immediately transferred the West Hempstead property the next day does not on its face seem amenable to an innocent explanation. And indeed, defendants have not provided any reason that would quell suspicions raised as a result of the timing of the transfer.

On the evidence before the it, the court finds that there is sufficient evidence to support a finding of fraudulent intent on the part of Reimer, the transferor. The burden then shifts to the transferee to show that there was fair consideration for the transfer. *See, e.g., DLJ Mortgage Capital Inc. v. Kontogiannis,* 594 F. Supp. 2d 308, 331 (E.D.N.Y. 2009). As discussed *supra*, the court finds no evidence of any consideration on the limited record before it. Although there has been no testimony regarding the extent of Keramis's knowledge of Reimer's intent, "[a]s a general rule, fraudulent intent on the part of the vendor and knowledge thereof on the part of the purchaser may be indicated by the fact that the consideration for the conveyance was not adequate or fairly proportioned to the value of the property." *In re Borriello,* 329 B.R. 367, 379 (Bankr. E.D.N.Y. 2005)(citation omitted). Accordingly, the court finds that plaintiff has established a likelihood of success on the merits on its fraudulent conveyance claim under DCL §276.

    2. DCL §§273 and 275

Since the court has determined plaintiff's has met its burden of demonstrating a likelihood of success on its claim under DCL §276, a detailed analysis of its claims under DCL §§ 273 and 275 is unnecessary. In brief, the undersigned believes plaintiff has shown a likelihood of success as to its claim under DCL §275, but has failed to meet its burden as to its

DCL §273 claim.

DCL §275 declares a transfer to be fraudulent if it lacks fair consideration, but requires that the transferor "intend[] or believe[] that he will incur debts beyond his ability to pay as they mature." For the reasons set forth above, the court finds that the transfer lacked fair consideration. Plaintiff must further show that Reimer transferred the property with the actual intent or belief that he faced debts beyond his ability to pay. As with the "actual intent" requirement under DCL §276, intent may be proven by examining the circumstances surrounding the transfer. *See, e.g., In re Borriello,* 329 B.R. at 379. As discussed *supra,* the court has already found that the numerous indicia of fraud here support a finding of actual intent. Accordingly, plaintiff has established a likelihood of success on its claim pursuant to DCL §275.

DCL §273 declares a conveyance to be fraudulent if it is made without "fair consideration" and the transferor is rendered insolvent by the transfer regardless of his actual intent. Under New York law, "a conveyance made by a person that is or will be rendered insolvent is fraudulent as to creditors, without regard to actual intent, if it is made without fair consideration." *Mazzeo,* 306 F. Supp. 2d at 306; DCL §273. The party challenging the conveyance must establish that there was a lack of consideration and that the transfer rendered the transferor insolvent. *Mazzeo,* 306 F. Supp. 2d at 306 (citing *American Inv. Bank, N.A. v. Marine Midland Bank, N.A.,* 191 A.D.2d 690, 692, 595 N.Y.S.2d 537, 538 (2d Dep't 1993)).

Although the court finds that plaintiff has adequately established lack of consideration for the transfer, see discussion *supra,* it has failed to prove that this particular transfer rendered Reimer insolvent. In the absence of such proof, plaintiff cannot establish a likelihood of success of its claim under DCL §273

C.	Balance of Hardships

Having established irreparable harm and a likelihood of success on the merits on two of its claims, plaintiff must also establish that the balance of hardships tips in its favor. Plaintiff is a corporation seeking to maintain access to the West Hempstead property to help recover its substantial losses allegedly suffered at the hands of Reimer. On the other hand there is Keramis, the current owner of the residence, who stands to lose her home, but who's level of complicity, if any, has yet to be examined. Given the overwhelming evidence of fraud, the court finds that the balance tips in plaintiff's favor. To minimize the burden on Keramis, however, the undersigned will, by separate order, schedule a discovery conference and set an expedited schedule for the completion of discovery.

**CONCLUSION**

For the above state reasons, it is respectfully recommended that plaintiff's motion for an order of attachment be denied, and that its request for a preliminary injunction be granted. The injunction should restrain defendants from transferring, dissipating, assigning, conveying, encumbering or otherwise disposing of the West Hempstead property during the pendency of this action.

**OBJECTIONS**

A copy of this Report and Recommendation is being sent to counsel for the parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov.

16

20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
January 29, 2010

    /s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge